## Illinois Steel Co. v. John McFadden, Adm'r.

1. MASTER AND SERVANT—*Injuries to Employes While Obeying Orders.*—Where, in a blast furnace, when removing a defective "bosh plate" for the purpose of replacing it with a new one, it was customary for the superintendent of the furnace to direct the blast to be entirely stopped at the time, and such superintendent having ordered an employe to assist in removing the plate without directing the blast to be so stopped, and as a consequence of his neglect, the removal of the plate

was accompanied by a torrent of fire, coke and gas, inflicting fatal injuries upon the employe, *it was held* that in failing to direct the blast to be stopped the superintendent was guilty of negligence, for which his principal was liable.

**Trespass on the Case.**—Death from negligence. Appeal from the Circuit Court of Will County; the Hon. Dorrance Dibell, Judge, presiding. Heard in this court at the April term, 1901. Affirmed. Opinion filed October 8, 1901.

Garnsey & Knox, attorneys for appellant.

J. W. Downey, attorney for appellee.

Mr. Justice Higbee delivered the opinion of the court.

This was an action on the case brought by appellee against the Illinois Steel Company, charging the latter with negligently causing the death of appellee's intestate, Harry Walsh, on May 22, 1899. The first count of the declaration charged that the defendant ordered said Harry Walsh to go upon a certain platform at a blast furnace in one of its buildings, and loosen a certain bronze plate or casting commonly called a "bosh plate" set in the wall of said furnace; that said Walsh and other agents and servants of appellant, in obedience to said order, went upon said platform and were engaged in loosening said plate, at a time when there was a blast in said furnace which caused a great amount of pressure upon the walls of the furnace and upon the bosh plate; that it was the duty of defendant to remove the pressure from said furnace, caused by said blast, so that said bosh plate would not, by said pressure, be forced out of the wall of the furnace; that appellant carelessly and negligently failed and neglected to cause the pressure on said furnace and bosh plate, caused by said blast, to be removed; that said blast forced said bosh plate from the wall of the furnace and permitted the flame and fire to escape, inflicting injuries upon said Walsh from which he afterward died. The second count was the same as the first, except that the injuries are alleged to have been caused by the negligence of Patrick Conlon, an employe of appellant, who was superintendent of the blast

furnace. The general issue was pleaded and there was a verdict and judgment in favor of appellee for $5,000, from which the company appeals.

Walsh was employed in the steel mills of appellant at Joliet as a pipe fitter, and worked under the direction of Conlon, an assistant superintendent of appellant, who had charge of all the men about the furnace room where deceased was employed. It was one of the duties of deceased to assist in removing bosh plates from the furnace when necessary. A bosh plate is a hollow metal casting inserted in the walls of a blast furnace, constructed so that a stream of water may be kept running through it, designed to keep the wall of the furnace cool. When a plate becomes injured so that it leaks, it must be removed and a new plate inserted. The plate in question was about twenty-two inches wide, twenty-eight inches long and about two and one-half inches thick on the side that was exposed to the heat of the furnace and about five inches thick on the outside. Such a plate weighs from 280 to 307 pounds. When it is necessary to remove a bosh plate, a bar of iron, which in this case was about thirteen feet long, is inserted into an ear on the plate made for the purpose. At the end of the bar farthest from the furnace a pin is inserted, projecting through the bar. A heavy ball which slides upon the bar is thrown forcibly against the pin and the bosh plate thus loosened. It was the custom to first loosen the bosh plate so that it could be taken out quickly, but to defer the final removal until a time when the casting of metal was being run out of the furnace. These castings were taken off about every three hours. When the casting is being taken off the blast upon the furnace is gradually lowered under the direction of the superintendent, or his assistant, until its entire removal, at which time the outlet from which the melted iron flows is stopped with a large lump of clay and the blast immediately turned on again with full force. It was the custom to remove the defective bosh plate and insert the new one while the blast was off. It is claimed by appellee that at the time of the accident in question

Conlon, the superintendent, failed to direct the blast to be entirely stopped at the time he ordered Walsh and the men with him to remove the bosh plate; that as a consequence of such neglect the removal of the plate was accompanied by a torrent of fire, coke and gas, which inflicted fatal injuries upon Walsh.

Appellant contends that the verdict is not sustained by the evidence. Prior to the occurrence of the accident the bosh plate in question had been loosened, preparatory to its removal during the time when the cast should be drawn from the furnace. While the cast was being taken off, Conlon ordered Walsh and the men who worked with him in that business to go upon the platform where the work was to be done and proceed to take out the plate. While there is some controversy upon the subject in the evidence, the weight of the proof is, that after ordering the plate to be removed, Conlon neglected to direct the blast to be entirely taken off and that as a consequence the injuries resulted to Walsh. Walsh was acting under the direction of Conlon and had a right to expect that he would order the blast to be taken off while the bosh plate was being removed. In failing to do this Conlon was guilty of negligence for which appellant, his principal, is responsible.

Appellant offered twenty instructions, eighteen of which, fully covering the case, were given. The first of the two refused instructions told the jury that if Walsh was apprised or notified by the blowing out of the nipple on the side of the bosh plate, that it would or might be dangerous to proceed with the work, it was his duty to notify the men who had charge of the weight on the bar to stop striking, and that if he failed to do so, he did not exercise the care for his own safety which the law requires. The instruction apparently assumes that the nipple on one side of the bosh plate was blown out. This was improper, as it was not an admitted fact that the nipple was blown out and it was therefore a question for the jury to determine.

But even if the nipple was blown out, the question as to whether it was therefore dangerous to proceed, and whether

if he did proceed, expecting, as he had a right to, that Conlon would cause the blast to be taken off, he was himself guilty of negligence, were also questions of fact for the jury.

The second of appellant's refused instructions informed the jury that if they found that Conlon superintended the removal of the bosh plate, and that he exercised all the care which in his judgment, as superintendent, it was necessary to exercise at that time, and that notwithstanding such exercise of care by him, the plate was forced out and Walsh injured, they should find for appellant. This instruction was also properly refused. There appears to have been a safe plan to follow in the removal of defective bosh plates, and that plan was the one used by Conlon and those under his direction prior to the time Walsh was injured. This instruction would have permitted Conlon, without notice to Walsh or the other employes, to depart from the usual custom which had been found to be safe, and experiment with a new and untried plan which might subject the employes to additional hazard, in case Conlon thought at the time he was exercising all the care that was necessary. Such experiments can not be permitted at the expense of employes. We find no error in the record and the judgment of the court below is accordingly affirmed.

Mr. Presiding Justice DIBELL took no part in the consideration or decision of this case.